# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ZACHARY S. WEITZEL,      :
                    :
         Plaintiff,     :     No. 3:18-cv-02283
                    :
      v.               :     (Saporito, M.J.)
                    :
ANDREW SAUL,[1]        :
Commissioner of       :
Social Security,       :
                    :
         Defendant.   :

## MEMORANDUM

This is an action brought under 42 U.S.C. §405(g), seeking judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying Zachary S. Weitzel ("Weitzel") claim for disability insurance benefits under Title XVI of the Social Security Act. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(c) and

---

[1] Andrew Saul was sworn in as Commissioner of Social Security on June 17, 2019. He is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d); *see also* Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g)(action survives regardless of any change in the person occupying the office of Commissioner of Social Security). The caption in this case is amended to reflect this change.

Rule 73 of the Federal Rules of Civil Procedure. (Doc. 20; Doc. 21). For the reasons stated herein, we will **AFFIRM** the decision of the Commissioner.

## I. *Background and Procedural History*

Weitzel is an adult individual born April 2, 1993, who was 21 years old at the time of his alleged onset date of disability – July 1, 2014. (Tr. 111). Weitzel's age at the onset date makes him a "younger person" under the Social Security Act. *See* 20 C.F.R. § 404.1563(c). Weitzel completed his high school education at Hazelton Area High School where he enrolled in all regular education classes with nondisabled peers, but received special accommodations. (Tr. 183). Weitzel has no post-secondary education or specialized vocational training. (Tr. 59). Additionally, Weitzel has never worked or attempted to work in his life, including part-time and full-time work. (Tr. 60). Thus, Weitzel has no past relevant work. *Id.*

On July 31, 2014, Weitzel protectively filed for Title XVI Supplemental Security Income ("SSI") benefits, alleging his onset date of disability as July 1, 2014. (Tr. 12). Weitzel reported that the following impairments prevent him from being able to work: irritable bowel syndrome ("IBS") with diarrhea, bipolar disorder, depression, anxiety,

and a newly diagnosed personality disorder. (Tr. 58; 225). Weitzel's claim was initially denied on November 17, 2014. (Tr. 12). Thereafter, Weitzel filed a timely request for an administrative hearing on January 5, 2015, and it was granted. (*Id.*). Weitzel appeared and testified before Administrative Law Judge ("ALJ") Timothy Wing on February 7, 2017, in Wilkes-Barre, Pennsylvania, and was represented by counsel, Shandra Kisailus, throughout the proceeding. (*Id.*). In addition, an impartial expert ("VE"), Michele Giorgio, also appeared and testified during the administrative hearing. (*Id.*). At the time of the hearing, Weitzel was 23 years old and resided with his partner and partner's parents in Wilkes-Barre, Pennsylvania, which is in the Middle District of Pennsylvania. (Tr. 59).

In a written decision dated August 23, 2017, the ALJ denied Weitzel's application for benefits. (Tr. 9). Weitzel sought further review of his claims by the Appeals Council of the Office of Disability Adjudication and Review, but his request was denied for review on September 27, 2018. (Tr. 1). Weitzel subsequently filed an appeal to this court on November 28, 2018, arguing that the ALJ's decision was not supported by substantial evidence. (Doc. 1). On February 11, 2019, the Commissioner filed his answer, in which he maintains that the ALJ's

decision was correct and in accordance with the law and regulations. (Doc. 11, at 3). This matter has been fully briefed by the parties and is ripe for decision. (Doc. 13; Doc. 17; Doc. 19).

Currently, Weitzel is a 26-year-old male who resides with his partner, Shawn Bly, and his partner's parents in Wilkes-Barre, Pennsylvania. (Tr. 59). Weitzel asserts that he is unable to perform any full-time work due to his IBS, which makes him go to the bathroom every hour to hour-and-a-half for at least fifteen to thirty minutes at a time. (Tr. 60). Weitzel's IBS is a more recent issue in terms of his alleged onset date of disability beginning July 1, 2014, as Weitzel solely indicated impairments of a bipolar disorder, depression, and anxiety on his disability application filed July 31, 2014. (Tr. 59-60).

Weitzel first began seeing gastroenterologist, Dr. Athar Altaf ("Dr. Altaf") in July 2014. (Tr. 25). Weitzel was referred to Dr. Altaf for evaluation of his ongoing digestive issues of diarrhea and abdominal pain. (Tr. 596). Upon examination, Weitzel complained of experiencing symptoms of intermittent diarrhea, with stool consistency varying from Bristol type four to seven. (*Id.*). Weitzel also complained of sometimes experiencing blood on toilet paper upon defecating, but denied anal pain. (*Id.*). During his examination, Weitzel indicated that he underwent a

colonoscopy approximately two years prior to his examination with Dr. Altaf, but reported that it revealed normal findings. (*Id.*). Overall, Weitzel's July 2014 examination with Dr. Altaf revealed normal findings except for obesity, but Dr. Altaf was unable to indicate how much advance notice Weitzel needed for a restroom break due to his ongoing digestive issues. (Tr. 25).

In April 2016, Weitzel alleged that he had to go to the bathroom four to five times a day. (*Id.*). It was also noted, in April 2016, however, that Weitzel had not seen a gastroenterologist in over a year and that examinations in the past demonstrated normal colon and terminal ileitis ("IT"). (*Id.*). In June 2016, Dr. Altaf diagnosed Weitzel with IBS with diarrhea. (Tr. 448). It was also noted in June 2016, that Weitzel was applying for disability based on bipolar disorder and his lawyer suggested that he see a gastroenterologist to include IBS in the problem list to qualify for disability. (Tr. 25).

In August 2016, Weitzel's gastrointestinal work-up was negative, but Dr. Altaf stated that Weitzel's symptoms were not fully controlled. (*Id.*). Further, in August 2016, Dr. Altaf completed an IBS medical source statement in which he deferred to Weitzel's primary care or disability provider to determine Weitzel's functional physical limitations and to

describe any other limitations. (*Id.*). In September 2016, Dr. Altaf opined that Weitzel needed a job that permitted ready access to a restroom with daily unscheduled restroom breaks during a working day for approximately fifteen to thirty minutes. (*Id.*). Dr. Altaf also opined that Weitzel's anxiety contributed to the severity of his symptoms and functional limitations. (*Id.*). Despite Weitzel's alleged impairments due to his IBS, Weitzel testified during his February 2017 administrative hearing that he had yet not seen Dr. Altaf, but he had a scheduled follow-up with him in March 2017. (*Id.*). Thus, the ALJ concluded that Weitzel's IBS was not severe and did not impose any significant restrictions on Weitzel's ability to perform basic work activities and afforded Dr. Altaf's opinion little weight. (*Id.*).

With regard to Weitzel's mental impairments, Weitzel was examined by Dr. Matthew Berger ("Dr. Berger") who completed a Medical Source Statement of Ability to Do Work-related Activities in December 2014. Dr. Berger also completed a mental residual functional capacity assessment. Both forms contain Dr. Berger's opinions which we discuss below. The ALJ afforded Dr. Berger's opinions little weight. (Tr. 23).

In February 2017, Weitzel testified at his administrative hearing that he could not work full-time because he had to go to the bathroom so

frequently. (Tr. 19). He further testified that he was taking Viberzi to treat his IBS, with little to no improvements in his condition. (Tr. 62-63). Additionally, when asked how many times he had visited Dr. Altaf after his June 2016 diagnoses of IBS, Weitzel testified that he had only seen Dr. Altaf approximately three times after his June 2016 diagnoses of IBS, and had yet to see Dr. Altaf in 2017, prior to his administrative hearing, but had scheduled a follow up appointment in March 2017. (Tr. 61-62).

The ALJ found that Weitzel's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. (Tr. 19).

## II. *Legal Standards*

When reviewing the denial of disability benefits, the Court's review is limited to determining whether those findings are supported by substantial evidence in the administrative record. *See* 42 U.S.C. § 405(g) (sentence five); *id.* § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before the Court, therefore, is not whether the claimant is disabled, but whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial

evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

To receive disability benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment[2] that makes it impossible to do his or her previous work or any other substantial gainful activity[3] that exists in the national

---

[2] A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

[3] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. § 416.910.

economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).

The Commissioner follows a five-step sequential evaluation process in determining whether a claimant is disabled under the Social Security Act. 20 C.F.R. § 416.920(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment;[4] (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity ("RFC");[5] and (5) whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. *Id.* The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 42 U.S.C. § 423(d)(5); *id.* § 1382c(a)(3)(H)(i); 20 C.F.R. § 416.912; *Mason,*

---

[4] An extensive list of impairments that warrant a finding of disability based solely on medical criteria, without considering vocational criteria, is set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1.

[5] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of his or her impairment(s) and any related symptoms (e.g., pain). 20 C.F.R. § 416.945(a)(1). In assessing a claimant's RFC, the Commissioner considers all medically determinable impairments, including those that are not severe. *Id.* § 416.945(a)(2).

994 F.2d at 1064. Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. § 416.912(f); *Mason*, 994 F.2d at 1064.

## III. *Discussion*

In his August 23, 2017, decision denying Weitzel's claim for benefits, the ALJ evaluated Weitzel's application for benefits at each step of the sequential process. At step one, the ALJ found that Weitzel had not engaged in substantial gainful activity since July 31, 2014, the application date. (Tr. 14). At step two, the ALJ found that the following impairments were medically determinable and severe during the relevant period: scoliosis, bipolar disorder, and personality disorder. (*Id.*). At step three, the ALJ found that Weitzel did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, during the relevant period. (Tr. 16). Between steps three and four, the ALJ assessed Weitzel's RFC. (Tr. 18). The ALJ found that Weitzel had the capacity to perform light work work as defined in 20 C.F.R.

§416.967(b) with the following limitations:

> [Weitzel] would need to avoid occupations that require climbing on ladders, ropes, and scaffolds, or frequent exposure to dangerous machinery and unprotected heights. He would also be limited to occupations requiring: no more than simple, routine, repetitive tasks, not performed in a fast-paced production environment, involving only simple, work-related decisions, and in general, relatively few work place changes; and no more than occasional interaction with supervisors, coworkers, and members of the public.

(*Id.*).

At step four, the ALJ found that Weitzel had no past relevant work. (Tr. 26). At step five, the ALJ determined that based on Weitzel's age, education, work experience, and RFC that there were a significant number of jobs in the national economy that Weitzel could perform, including a recorder, a hand packer and packager, and machine feeder. (Tr. 27).

Weitzel contends that the decision of the ALJ is not supported by substantial evidence of record and raises two issues on appeal attacking various aspects of the ALJ's decision. We shall address each argument seriatim.

### a. *The ALJ Did Not Err in Finding Weitzel's IBS Nonsevere.*

First, Weitzel argues that the ALJ erred in not finding his IBS a severe impairment. (Doc. 13, at 3). Weitzel asserts that in determining

that his IBS was nonsevere, the ALJ erroneously relied on a treatment note provided by Dr. Altaf, his treating gastroenterologist, which indicated that Weitzel experienced improvements with the prescription drug Viberzi. (Doc. 13, at 4). Weitzel further contends that the ALJ ignored other medical evidence of record, including his testimony concerning the efficacy of the drug, Viberzi. (Doc. 13, at 5). For example, Weitzel asserts that other evidence of record, including his testimony indicate that while taking Viberzi, he continued to experience diarrhea, stomach pain, and little improvement. (Doc. 13, at 5). Weitzel argues that since the ALJ's decision concerning the severity of his IBS is contradicted by other medical evidence of record, including his testimony and Dr. Altaf's treatment notes, failure to find his IBS severe was harmful error and warrants a remand. (Doc. 13, at 6). We find this argument unpersuasive.

At step two of the five-step sequential evaluation process, the ALJ must determine whether a claimant has a medically determinable impairment or a combination of impairments that is severe. 20 C.F.R. § 416.920(a). An impairment or combination of impairments is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c). A determination that an

individual's impairment is not "severe" requires evaluation of the medical findings that describe the impairment, including the objective medical evidence and any impairment-related symptoms and an informed judgment about the limitations and restrictions the impairment and related symptoms impose on the individual's physical and mental ability to do basic work activities.[6] Soc. Sec. Ruling 96-3p, 1996 WL 374181, at *2.

It is well-established that the ALJ—not treating or examining physicians or state agency consultants—must make the ultimate disability and RFC determinations. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). Further, where the ALJ's decision in a social security disability benefits case is explained in sufficient detail to allow meaningful judicial review and the decision is supported by substantial evidence, a claimed error may be deemed harmless. *Richards*, 223 F. Supp. 3d at 304.

---

[6] We note that Social Security Ruling 96-3p is no longer the governing regulation for claims filed on or after June 14, 2018. *See* Soc. Sec. Ruling 16-3p, 2016 WL 11190929 (Mar. 16, 2016). The Social Security Administration found Social Security Ruling 96-3p to be duplicative of the newer Social Security Ruling16-3p concerning evaluating of symptom severity. Since, the ALJ's decision in the case of Weitzel was issued on August 23, 2017, however, Social Security Ruling 96-3p still governs the ALJ's analysis in this case.

Typically, any error in failing to find a severe impairment at step two would be a "harmless error" if the ALJ continued with the analysis, proceeding on to step three, as he did here. *See Salles v. Comm'r of Soc. Sec.*, 229 Fed. App'x 140, 145 n.2 (3d Cir. 2007). Regardless, we find that the ALJ did not err in failing to find Weitzel's IBS a severe impairment. In finding Weitzel's IBS nonsevere, the ALJ carefully considered the medical record in its entirety, including the medical opinion of Weitzel's gastroenterologist, Dr. Altaf and Weitzel's testimony. For example, the ALJ considered the IBS medical source statement completed by Dr. Altaf, in which he opined that Weitzel needed a job that permitted ready access to a restroom with daily unscheduled restroom breaks during a working day for fifteen to thirty minutes at a time. (*Id.*). Dr. Altaf also opined that Weitzel's anxiety contributed to the severity of Weitzel's symptom's and functional limitations. (*Id.*).

Additionally, the ALJ considered Dr. Altaf's other medical opinions of record, but afforded it little weight. (*Id.*). For example, in July 2014, Dr. Altaf noted that it was likely that Weitzel had IBS, after complaining of symptoms of diarrhea occurring intermittently and stool consistency varying from Bristol type four to seven, with occasional blood on toilet paper. (Tr. 15). Dr. Altaf, however, was unable to state how much

advance notice Weitzel needed for a restroom break. (*Id.*). The ALJ further considered Dr. Altaf's June 2016 treatment notes, which indicated that Weitzel was applying for disability based on bipolar disorder and his lawyer suggested that he see a gastroenterologist to include IBS in the problem list to qualify for disability. (*Id.*). Moreover, the ALJ considered treatment notes, which revealed that on August 2016, Weitzel's gastrointestinal workup was negative, but Dr. Altaf indicated that Weitzel's symptoms were not fully controlled. (Tr. 25). The ALJ also considered Dr. Altaf's treatment notes, which stated that by September 2016, Weitzel's diarrhea had improved since starting Viberzi, demonstrating that the medication had helped, and he would continue to take it. (*Id.*). Furthermore, the ALJ considered treatment notes in which Dr. Altaf stated that Weitzel's IBS treatment was successful, coupled with Weitzel's February 2017 testimony indicating that he had not yet seen Dr. Altaf for IBS treatment, but had a follow up with him in March 2017. (*Id.*). Thus, the ALJ concluded that Weitzel's IBS was not severe and did not impose any significant restrictions on Weitzel's ability to perform basic work activities and afforded Dr. Altaf's opinion little weight. (*Id.*).

Lastly, the ALJ considered Weitzel's written statements and oral testimony. (Tr. 19). For example, in April 2016, Weitzel stated that he had to go to the bathroom four to five times a day. (Tr. 25). Additionally, in February 2017, Weitzel testified that he could not work full-time because he had to go to the bathroom every hour or hour-and-a-half for fifteen to thirty minutes at a time. (Tr. 60). The ALJ also considered Weitzel's testimony indicating that he was taking the drug Viberzi, with little to no improvements in his condition. (Tr. 62-63). When asked how many times he had visited Dr. Altaf since his June 2016 IBS diagnosis, however, Weitzel testified that he had only seen Dr. Altaf approximately three times in 2016 and had yet to see Dr. Altaf prior to his administrative hearing, but had an appointment scheduled in March 2017. (Tr. 61-62).

The ALJ found that Weitzel's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. (Tr. 19).

In essence, the ALJ considered the medical record in its entirety and based on the evidence determined that Weitzel's IBS was a

nonsevere impairment. Weitzel argues that the ALJ committed error by failing to find his IBS a severe impairment, but the ALJ's decision on this issue was accompanied by an adequate and articulated rationale. Thus, the ALJ's assessment complied with the dictates of the law and was supported by substantial evidence. Accordingly, we find that the ALJ did not err in finding Weitzel's IBS a nonsevere impairment.

### b. The ALJ Did Not Err in Giving the Opinions of Dr. Berger and Dr. Altaf Limited Weight.

Next, Weitzel argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to properly weigh the opinion evidence of Dr. Berger and Dr. Altaf pursuant to the treating physician rule. (Doc. 13, at 12). Weitzel asserts that this case should be remanded for proper weighing of the evidence. (Doc. 13, at 7). We find that this argument lacks merit.

The Third Circuit has ruled that the ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations. *Chandler*, 667 F.3d at 361. The ALJ is charged with a duty to evaluate all the medical opinions in the record under the factors set forth in the regulations and to resolve any conflicts. 20 C.F.R. § 416.927. An ALJ may give an opinion less

weight or no weight if it does not present relevant evidence or a sufficient explanation to support it, or if it is inconsistent with the record as a whole. 20 C.F.R. § 416.927(c). The ALJ may choose which medical evidence to credit and which to reject as long as there is a rational basis for the decision. *Plummer*, 186 F.3d at 429. Further, it is well-established that this Court's review is limited to determining whether the commissioner's decision is supported by substantial evidence. *Thomas v. Massanari*, 28 Fed. App'x 146, 147 (3d Cir. 2002). This Court neither undertakes a de novo review of the decision, nor does it re-weigh the evidence in the record. *Thomas*, 28 Fed. App'x at 147. Courts reviewing a social security disability benefits hearing are not permitted to re-weigh the evidence or impose their own factual determinations. *Chandler*, 667 F.3d at 359.

Here, we find that the ALJ did not err in the weight he assigned to the opinion evidence of Dr. Berger and Dr. Altaf. The ALJ considered the opinion of Dr. Berger and afforded the opinion little weight. (Tr. 24). Dr. Berger opined that Weitzel experienced extreme limitations in understanding and remembering complex instructions, making judgments on complex work-related decisions, responding appropriately to usual work situations and experienced marked limitations in making

judgments on simple work-related decisions, carrying out complex instructions, and interacting with supervisors and co-workers. (Tr. 23-24). Dr. Berger also opined that Weitzel experienced moderate limitations in understanding, remembering, and carrying out simple instructions, and interacting with the public. (Tr. 24).

Additionally, in a mental residual functional capacity assessment, Dr. Berger opined that Weitzel experienced marked limitations in his ability to remember locations, work-like procedures. (*Id.*). He further opined that Weitzel experienced marked limitations in understanding, remembering, and carrying out detailed instructions, maintaining attention for extended periods, performing activities within a schedule, maintaining regular attendance, including punctuality. (*Id.*). Moreover, Dr. Berger opined that Weitzel experienced marked limitations in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and his ability to perform at a consistent pace without an unreasonable number of length of rest periods. (*Id.*).

Dr. Berger also opined that Weitzel was capable of accepting instructions and responding appropriately to criticism from supervisors, getting along with coworkers without distracting them or exhibiting

behavioral extremes, appropriately responding to changes in the work setting, being aware of normal hazards, and setting realistic goals independently of others. (*Id.*). Furthermore, Dr. Berger opined that Weitzel was moderately limited in his ability to understand, remember, and carry our short and simple instructions, sustain an ordinary routine without special supervision, make simple work-related decisions, interact appropriately with the public, ask simple questions or request assistance, and travel to unfamiliar places or use public transportation. (*Id.*). Dr. Berger further opined that despite adequate doses of various medications, Weitzel continued to experience significant symptoms of bipolar disorder, suffered from mood swings, depression, anxiety, impaired concentration, irritability, poor frustration tolerance, and sleep disturbances daily, and could not consistently prepare meals or clean. (*Id.*).

With regard to Weitzel personality disorder, in August 2016, Dr. Berger opined that Weitzel's personality disorder, affective disorder, anxiety-related disorder met listings 12.08 (Personality and Impulse-Control Disorders), 12.04 (Depressive, Bipolar, and Related Disorders), and 12.06 (Anxiety and Obsessive-Compulsive Disorders) because each impairment alone resulted in a marked restrictions of activities of daily

living, marked difficulties in maintaining concentration, persistence, or pace, and repeated episodes of decompensation, each of extended duration. (*Id.*)

The ALJ afforded Dr. Berger's opinion little weight. (*Id.*). The ALJ concluded that although Dr. Berger identified the factors that supported his assessments, he only listed or checked off symptoms rather than explain the extreme restrictions given. (*Id.*). Further, the ALJ concluded that Dr. Berger's opinions were inconsistent with the opinion of the impartial medical expert, Dr. Jeffrey Fremont, and the opinion of DDS, which was more consistent with the medical evidence of record showing the benign nature of Weitzel's mental impairments. (*Id.*). Moreover, the ALJ found that Dr. Berger's opinions were not well-supported by recent examinations, and that Weitzel's mental impairments were not significantly limiting because Weitzel testified that Dr. Berger had not seen him since the beginning of 2016 (his last documented visit to Dr. Berger was January 2016). (*Id.*) Thus, the ALJ afforded little weight to Dr. Berger's opinion.

Additionally, the ALJ considered the opinion of Dr. Altaf and similarly afforded his opinion little weight. (Tr. 25). In August 2016, Dr. Altaf completed an IBS medical source statement in which he deferred to

Weitzel's primary care or disability provider to determine his functional physical limitations and to describe any other limitations. (*Id.*). In September 2016, Dr. Altaf opined that Weitzel needed a job that permitted ready access to a restroom with daily unscheduled restroom breaks during a working day for fifteen to thirty minutes. (*Id.*). Dr. Altaf also opined that Weitzel's anxiety contributed to the severity of his symptoms and functional limitations. (*Id.*).

Further, in July 2014, Dr. Altaf noted that it was likely that Weitzel had IBS, after complaining of symptoms of diarrhea occurring intermittently and stool consistency varying from Bristol type four to seven, with occasional blood on toilet paper. (Tr. 15). However, Dr. Altaf was unable to state how much advance notice Weitzel needed for a restroom break. (*Id.*). In June 2016, Dr. Altaf noted that Weitzel was applying for disability based on bipolar disorder and his lawyer suggested that he see a gastroenterologist to include IBS in the problem list to qualify for disability. (*Id.*). Additionally, in August 2016, Weitzel's gastrointestinal workup was negative, but Dr. Altaf indicated that Weitzel's symptoms were not fully controlled. (Tr. 25). By September 2016, however, Dr. Altaf noted that Weitzel's diarrhea had improved since starting Viberzi, demonstrating that the medication had helped,

and he would continue to take it. (*Id.*). Moreover, Dr. Altaf's treatment notes revealed that the treatment of Weitzel's IBS was successful. (*Id.*). Further, in February 2017, during Weitzel's administrative hearing, he testified that he had not yet seen Dr. Altaf, but had a follow up with him in March 2017. (Tr. 25). Thus, the ALJ concluded that Weitzel's IBS was not severe and did not impose any significant restrictions on Weitzel's ability to perform basic work activities and afforded Dr. Altaf's opinion little weight. (*Id.*).

In sum, the ALJ chose between contrasting medical opinions, giving greater weight to those opinions which were more congruent with Weitzel's treatment records and activities of daily living. It is the right and responsibility of the ALJ to make such assessments and we find that substantial evidence supported the ALJ's decision. Weitzel's argument simply asks this Court to re-weigh the evidence, which we cannot do. *Thomas*, 28 Fed. App'x at 147; *see also Chandler*, 667 F.3d at 359. Because we cannot re-weigh the evidence, we find the ALJ has not erred in his consideration of the opinion evidence of Dr. Berger and Dr. Altaf.

An appropriate Order follows.

JOSEPH F. SAPORITO, JR.
United States Magistrate Judge

Dated:  January 17, 2020

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ZACHARY S. WEITZEL,     :
    :
        Plaintiff,     :     No. 3:18-cv-02283
    :
        v.     :     (Saporito, M.J.)
    :
ANDREW SAUL,[7]     :
Commissioner of Social Security, :
    :
        Defendant.     :

## ORDER

AND NOW, this 17th day of January, 2020, in accordance with the accompanying Memorandum, IT IS HEREBY ORDERED THAT:

1.     The Clerk of Court shall enter final judgment AFFIRMING the decision of the Commissioner of Social Security; and

2.     The Clerk of Court shall CLOSE this case.

*Joseph F. Saporito, Jr.*

JOSEPH F. SAPORITO, JR.
United States Magistrate Judge

Dated: January 17, 2020

---

[7] Andrew Saul was sworn in as Commissioner of Social Security on June 17, 2019. He is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). See also Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g)(action survives regardless of any change in the person occupying the office of Commissioner of Social Security). The caption in this case is amended to reflect this change.